1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 24, 2024

SEAN F. McAVOY, CLERK

4      UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5

6    PAUL M.,[1]                        No.    4:24-cv-3070-EFS

7                  Plaintiff,

8         v.                           **ORDER REVERSING THE ALJ'S
                                       DENIAL OF BENEFITS, AND
9    MARTIN O'MALLEY, Commissioner of  REMANDING FOR MORE
     Social Security,                  PROCEEDINGS**

10

11                  Defendant.

12

13         Plaintiff Paul M. asks the Court to reverse the Administrative Law Judge's

14   (ALJ) denial of Title 16 benefits and to award benefits because the ALJ erred in his

15   analysis. The ALJ's analysis did contain error. However, remand for further

16   proceedings before a different ALJ, rather than remand for benefits, is appropriate.

17                       **I.      Background**

18         In 2021, Plaintiff applied for benefits under Title 16, claiming disability

19   beginning June 30, 2019, at the age of 50, based on schizophrenia, bilateral

20

21   [1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

22   "Plaintiff." *See* LCivR 5.2(c).

23

degeneration in the shoulders, high rheumatoid arthritis factor, hepatitis C, and multi-level protruding discs, stenosis, degeneration, and perineural cysts in the spine.[2]

After the agency denied benefits, ALJ Robert Campbell held a telephone hearing in February 2023, at which a vocational expert testified.[3] Plaintiff did not appear but was represented by counsel.[4] After the hearing, the ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged symptoms "were not entirely consistent with the medical evidence and other evidence."[6] In addition, the ALJ found none of the medical opinions persuasive.[7] As to the sequential disability analysis, the ALJ found:

---

[2] AR 227–49. Plaintiff also filed for Title 2 disability, but his alleged onset date was 5 years after his date last insured in June 2014. AR 23, 26.

[3] AR 38–46, 87–127.

[4] AR 20–21 (detailing steps the Commissioner took to advise Plaintiff of his right to appear at the hearing).

[5] AR 17–37. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 26–28. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[7] AR 28–30.

- Plaintiff met the insured status requirements through June 30, 2014.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 30, 2019, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairment: schizophrenia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff could perform a full range of work at all exertional levels, but he was limited to simple, routine work and no public contact.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as vehicle cleaner, marker, and salvage laborer.[8]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[9]

---

[8] AR 20–32.

[9] AR 1–6.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[10] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]

## III.    Analysis

Plaintiff argues the ALJ committed several errors by not finding a severe physical impairment, when evaluating the medical opinions, and when considering

---

[10] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[11] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Plaintiff's reported symptoms. The Commissioner argues the ALJ's denial of disability was based on a reasonable interpretation of the medical evidence and other evidence of record. As is explained below, the ALJ harmfully erred at step two and when evaluating Plaintiff's reported symptoms. Remand is necessary.

**A.    Step Two: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred at step two by failing to consider his physical disorders as a severe impairment. The Commissioner argues that because no doctor opined that Plaintiff's physical impairments caused limitations, the ALJ's step-two finding is supported by substantial evidence. Plaintiff prevails on his claim of step-two error.

At step two, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[12] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[13] To be severe, the medical evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[14]

---

[12] 20 C.F.R. § 416.920(c).

[13] *Id.* § 416.920(a)(4)(ii).

[14] *Id. See* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[15] Rather, an impairment "must be established by objective medical evidence from an acceptable medical source," including objective medical signs and laboratory findings, such as x-rays.[16] In addition, evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[17] If the objective medical evidence demonstrates that the claimant has a medically determinable impairment, the ALJ must then determine whether that impairment is severe.[18]

---

[15] *Id.* § 416.921.

[16] *Id.* §§ 416.902(g), 416.921. *See also id.* § 416.1502(1) (Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)."); SSR 85-28 at *4 ("At the second step of sequential evaluation . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

[17] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. §§ 416.902(k), 416.913(a)(1).

[18] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

The severity determination is discussed in terms of what is *not* severe.[19] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[20] Because step two is simply to screen out weak claims,[21] "[g]reat care should be exercised in applying the not severe impairment concept."[22] Step two "is not meant to identify the impairments that should be taken into account when determining the RFC" as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[23]

Here, the ALJ did not discuss any physical impairments, instead only finding that Plaintiff had a severe impairment of schizophrenia.[24] The Commissioner argues it was reasonable for the ALJ to find that schizophrenia was the only severe impairment because the record contains only isolated evidence about Plaintiff's back, shoulder, and knee complaints—and these impairments

---

[19] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[20] *Id.*; *see* SSR 85-28 at *3.

[21] *Smolen*, 80 F.3d at 1290.

[22] SSR 85-28 at *4.

[23] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[24] AR 23.

were not severe. However, contrary to the Commissioner's argument, the medical record contains imaging results that indicate Plaintiff's medical providers diagnosed moderate lumbar and cervical impairments, along with mild thoracic and shoulder impairments, and that these impairments likely have more than a minimal effect on his ability to work:

- March 2011 x-ray: disc bulges at C3/C4 – C6/C7, and spinal canal stenosis at C3/C4 and C4/C5, which may be causing impingement, along with mild stenosis at C5/C6 and C6/C7.[25]

- February 2021 x-ray: moderate degenerative changes at C3/C4 and C4/C5 with slight disc space narrowing and hypertrophic spurring.[26]

- March 2021 MRI: moderate disc protrusion at L3/L4 with slightly narrow neural foramina left greater than right and mild central canal stenosis, and moderate bilobed disc protrusion at L4/L5 with mild foraminal stenosis, left greater than right and mild facet joint arthropathy.[27]

In addition, treatment records reflect that providers observed Plaintiff with:

- A positive straight leg raise and pain on palpation of the L4 and L5.[28]

---

[25] AR 379–80.

[26] AR 398.

[27] AR 418–19.

[28] AR 343.

1

2

- Low back lumbar pain at several areas with sensation changes, a hard time walking, and a positive straight leg raise.[29]

3

- Moderate distress due to lumbar pain.[30]

4

- Decreased lumbar flexion and vertebral tenderness.[31]

5

6

7

8

9

10

11

Given these medical records, the ALJ erred by not finding a severe physical impairment, particularly related to Plaintiff's lumbar and/or cervical spine. This error was consequential because the ALJ did not consider any physical limitations but instead crafted an RFC allowing for a "full range of work at all exertional levels."[32] Consistent with the RFC, two of the step-5 jobs are medium level, requiring one to lift up to 50 pounds.[33] The ALJ's failure to consider physical disorders was thus harmful error.

12

13

14

[29] AR 414.

15

16

[30] AR 421.

[31] AR 441.

17

18

19

20

21

[32] AR 25. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

22

[33] AR 31. *See* 20 C.F.R. § 416.967.

23

**B.    Symptom Reports: Plaintiff establishes consequential error.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.[34] However, as is discussed below, the ALJ failed to provide a rationale clear enough to convince the Court that Plaintiff's reported schizophrenia symptoms are inconsistent with the evidence of record.

1.    Standard

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[35] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[36] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence, 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or

---

[34] AR 26–28.

[35] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

[36] *Id.* (alteration added).

other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[37]

    2.   <u>Plaintiff's Reported Symptoms</u>

Plaintiff did not appear for the hearing and thus did not testify about his symptoms.[38] Plaintiff also did not appear for the interview with the field office personnel or complete an adult function report.[39] Instead, Plaintiff's application for disability was filed by his counsel, James Tree, after counsel was contacted during a January 20, 2021 mental-health therapy appointment that Plaintiff had with Counselor Dorothy Miller. During the appointment, Counselor Miller helped Plaintiff call Mr. Tree to initiate the SSI application process.[40]

Therefore, the reported symptoms by Plaintiff that the ALJ evaluated were those that Plaintiff made during his psychological evaluation with David Morgan, PhD, in January 2021 and to treating providers. The ALJ mentions that Plaintiff reported hallucinations and delusions to Dr. Morgan and to the emergency

---

[37] 20 C.F.R. § 416.929(c). *See also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[38] AR 20–21.

[39] AR 271, 284–89.

[40] AR 697.

department personnel in October 2020 and that he told treating staff in September

2022 that "he felt somewhat unstable."[41]

### 3. ALJ's Analysis

The ALJ made the broad, general finding that Plaintiff's "statements

concerning the intensity, persistence, and limiting effects" of his medically

determinable impairment were:

> not entirely consistent with the medical evidence, and other evidence
> in the record for the reasons explained in this decision. While enough
> treatment records are included in the medical file to identify the
> claimant's impairments, the file does not support the alleged severity
> of his symptoms. Though the claimant does have some ongoing
> limitations due to his schizophrenia, this disorder does not cause more
> restrictions than those found in the residual functional capacity
> [which allows for a full range of simple, routine work with no public
> contact].[42]

The ALJ also mentioned that the providers during Plaintiff's visit to the emergency

department in October 2020 "asserted that the claimant's symptom complaints are

directly related to being off his medications and his meth use."[43] The ALJ found

that, after being involuntarily admitted for inpatient observation following his

emergency department visit, Plaintiff "rapidly improved and he was consistently

found to be calm, pleasant, logical, and, while somewhat hyperverbal and

occasionally exhibiting a constricted affect, he [was] not overtly delusional or

---

[41] AR 27–28.

[42] AR 26.

[43] AR 27.

1   hallucinating and had organized thought processes."[44] The ALJ then highlights

2   that during a medical appointment in September 2022 Plaintiff admits he has been

3   "gainfully employed as a home health attendant."[45] The ALJ concludes "[t]he

4   remainder of the claimant's medical record fails to support the allegation of a

5   period of significant limitation that exceeds the residual functional capacity."[46]

6          4.    Court's Review of the ALJ's Findings

7          The ALJ's decision to discount the limiting effects of Plaintiff's schizophrenia

8   was not based on a full and fair review of the medical records. Instead, the ALJ

9   focused on the normal mental-health findings in the medical records without

10  considering the abnormal mental-health findings and the nature of

11  schizophrenia.[47]

12         For instance, in October 8, 2020, Plaintiff sought emergency room treatment.

13  Although the ALJ highlights that Plaintiff was found to be "alert, fully orientated,

14  and that he denies suicidal ideation," that he testified positive for

15  methamphetamine and marijuana, and that he admitted he had not taken his

16  _____

17  [44] AR 27.

18  [45] AR 28.

19  [46] AR 28.

20  [47] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) (The

21  ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring

22  competent evidence in the record that suggests an opposite result.").

23

mental-health medication,[48] the ALJ did not also highlight that Plaintiff presented with paranoia and mildly disorganized thinking.[49] Plaintiff was released from the emergency department for involuntary inpatient observation for 17 days at Comprehensive Healthcare's Bridges Evaluation and Treatment ("Bridges"), an acute inpatient treatment facility.[50] During his inpatient stay, Plaintiff was observed to be delusional; derailed in conversation; poorly groomed and disheveled, with persecution delusions and racing thoughts; disoriented to the situation; grandiose; tangential; hyperverbal; restless; and with poor insight and judgment.[51] The discharge paperwork from Bridges states:

> Throughout the hospital course pt displayed psychosis, delusions, paranoia. Patient was started on thorazine for paranoia and delusions. He quickly became more organized and less fixated on his delusions but would at times engage deeply in various paranoid ideas and discuss the various hallucinations he was having. We titrated his thorazine in response to this. Pt was very pleasant throughout his stay and seemed knowledgeable about a variety of topics. He complained of nightmares and was eventually started on prazosin and took PRN trazodone fairly regularly. He at times was medication seeking, asking for scheduled medications by name but was not upset when these were not provided.
>
> Patient was observed for improvement with mood, emotional stability, and evidence of extra sensory perceptions. Patient showed a beneficial effect from the medication adjustments and the therapeutic environment. Psychosocial stressors were a contributing factor in this

---

[48] AR 27.

[49] AR 971.

[50] AR 902, 995.

[51] *See, e.g.*, AR 495–620.

case (please see psychiatric evaluation and therapy assessment). Pt was eating and sleeping appropriately, and denied any intention to harm self or others prior to discharge. With the combination of medications and therapy, patient reported improvement in mental health symptoms and greater emotional stability. Pt received appropriate planning for continued treatment post discharge.[52]

Following his release from Bridges, during his first medication-management appointment in early December 2024 with Dr. Gregory Sawyer, Plaintiff presented as minimally conversant, speaking in declarative statements, with a neutral mood and affect, with normal concentration and attention span, and had poor insight and judgment.[53] Dr. Sawyer noted that it was difficult to assess thought content and perception due to Plaintiff's presentation and that Plaintiff reported delusions and auditory hallucinations. Dr. Swayer wrote:

> Well, this fellow is odd, and this is an odd case for sure. He was [discharged] to a homeless shelter in The Dalles, but ended up in a friend's house in Goldendale. He was discharged without meds, so he's been off meds at all for a while. He now tells me, in opposition to the hospital notes, that none of the meds helped him at all. He's run through a whole catalog of psychiatrists and caretakers over the years, per him, and he says that nothing works. I suspect that some of these meds DO work, but part of his psychosis is not to admit to that, and/or that he's not taken them, or both. We'll have to see.[54]

At a mental-health assessment a week later, Plaintiff "seemed hyper vocal" and "shared openly and with a little bit of excitement about his paranoia of people

---

[52] AR 848.

[53] AR 633–42.

[54] AR 634.

DISPOSITIVE ORDER - 15

following him."[55] During an appointment the next week, although he presented as

calm, alert, and focused, he also:

> report[ed] thinking about hurting other people due to his paranoia, stating he had anger issues over his ex-girlfriend this weekend, and beating up a tree and a truck. He said the thoughts in his head today are on a scale of about 8/10 and is having a "difficult time shutting down the negative voices."[56]

In addition, he "continue[d] with religious and grandiose delusions and

disorganized thought" and "he struggled to redirect and follow through, he was

mildly disheveled with impaired gait and posture, and he would change his voice

tone.[57] The evaluator concluded that he "meets criteria for intensive inpatient

treatment."[58]

In comparison to these December 2020 medical records, the ALJ relied

heavily on a medical note from an appointment during which Plaintiff sought to

establish care for his reported bilateral knee pain, carpal tunnel surgery, acid

reflex, and COPD.[59] In summarizing this treatment note, the ALJ stated that

Plaintiff:

---

[55] AR 644.

[56] AR 657, 668.

[57] AR 671, 680.

[58] AR 680.

[59] AR (citing AR 343–46). *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-

reported continued and active engagement with both counseling and medication management through Bridges Comprehension, further asserting that his behavioral health symptoms were manageable and under good control with his consistent adherence [to] his medication and treatment plan and he had no thoughts of suicidal or homicidal ideation. Examination findings from this visit show that the claimant denied mental status, presented as alert, fully orientated, and in no acute distress, and exhibited intact judgment and insight, normal mood and appropriate affect.[60]

While an ALJ need not discuss each piece of evidence,[61] an ALJ may not cherry pick evidence.[62] Here, the ALJ did so by focusing unfairly on the

---

health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

[60] AR 27.

[61] *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)).

[62] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (recognizing it is improper for an ALJ to "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result").

normal mental-health findings while largely ignoring the abnormal mental-health findings. By relying on the normal mental-health findings, the ALJ's finding that Plaintiff's mental-health findings were manageable and under good control was not supported by substantial evidence.

In addition, the ALJ placed too much weight on Plaintiff's reports to providers that he was doing well or taking his medication, that he was volunteering, and that he was gainfully employed. First, the medical record reflects that Plaintiff was not consistent with taking his mental-health medication over the longitudinal period.[63] Regardless, as was discussed above and further below, the ALJ failed to identify how the record supports sustained improvement. In addition, the ALJ failed to assess whether Plaintiff's medication noncompliance was a result of his schizophrenia.[64] The

---

[63] *See, e.g.*, AR 632–34, 1007, 1046.

[64] *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions"); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *Fair v. Bowen*, 885 F.2d 597, 603–04

record reflects that Plaintiff's ability to accurately relay his medication compliance or assess whether he is doing well is questionable. A provider and an evaluator questioned whether Plaintiff's schizophrenia impacts his ability to be an accurate historian:

- January 2021: noting that Plaintiff's recitation of his educational history was "likely . . . inaccurate and part of his delusional state."[65]

- February 2021: "Patient does not appear to be an accurate historian. It did seem like many aspects of his history were true, but then he made grandiose statements as well about solving Pi. This history should be interpreted with caution."[66]

- April 2021: "Patient appears to be a poor historian and can have prominent delusions, so it is important to consider this in evaluating his medical history."[67]

Second, while an ALJ may consider a claimant's volunteering, daily activities, and work when evaluating the claimant's symptom reports, here,

_____

(9th Cir. 1989); Soc. Sec. Rlg. 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[65] AR 978.

[66] AR 410.

[67] AR 430.

the ALJ should have evaluated Plaintiff's statements about his activities, volunteering, and work with a lens that appropriately considers that Plaintiff's schizophrenia may cause him to exaggerate or have delusions:

- "He reported having a Masters Degree in Mechanical Engineering and Electrical Engineering. However, when I asked him about this later he stated that he had enough credits for these Master's degrees, but inferred that he may have never actually completed even a bachelor's degree."[68]

- "He shares a story of previous successes in power lifting, possible Olympic hopeful before being drafted into Desert Storm. He says he studied engineering through them and eventually became an engineer."[69]

- "Makes grandiose statements, including 'I have 3 masters degrees and 2 bachelor degrees from MIT . . . I know 6 languages, Hebrew, Arabic."[70]

- "Client reports he graduated from high school and went on to attend college and has earned multiple graduate degrees.

---

[68] AR 411.

[69] AR 906.

[70] AR 953.

However, it is likely this is inaccurate and part of his delusional state."[71] Rather than question the accuracy of Plaintiff's statements to providers that he was volunteering and working, the ALJ used these activities as a reason to discount the limiting effects of Plaintiff's schizophrenia. Noteworthy, the earnings records reveal many years of no earnings and most years Plaintiff earned between $400 to $6,000, and the listed name of the employers indicate that Plaintiff engaged in physical, temporary labor jobs rather than engineering or other professional work.[72]

Finally, contrary to the ALJ's finding that Plaintiff was "consistently" shown to have normal mental-health findings, a fair reading of the December 2020 records, as discussed above, as well as subsequent mental-health records do not reveal that Plaintiff "consistently" had normal mental-health findings. For instance, in April 2021, Plaintiff was observed to be tangential with minimal disorganization, delusional, hyper-focused on certain topics, and with limited insight and judgment, and in July 2021, he was observed with tangential thought process and grossly impaired insight and judgment and as distractible with delusional and circumstantial

---

[71] AR 978.

[72] AR 252–57.

thoughts.[73] Simply because a claimant shows some improvement does not

mean that his symptoms have improved to a point where the symptoms no

longer preclude competitive employment.[74] For evidence of successful

treatment to provide a valid basis for an ALJ to reject the claimant's mental-

health symptom reports, the evidence must demonstrate that 1) the relief is

lasting, and 2) the type and degree of relief are such that it is truly at odds

with the symptom reports being rejected.[75] Here, the ALJ failed to clearly

and convincingly establish that the evidence demonstrates either of these

prongs.

     5.   <u>Conclusion</u>

     On this record, the ALJ failed to offer clear and convincing reasons

supported by substantial evidence for finding that Plaintiff's schizophrenia

symptoms allowed him to sustain fulltime work so long as he was limited to simple,

routine work with no public contact. This error consequentially impacted the RFC.

---

[73] AR 427–30, 738–51.

[74] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001).

[75] *See Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *see also Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (recognizing that an ALJ must account for the context of the claimant's prior report as well as the nature of his impairment and its symptoms).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**C.    Medical Opinions: The ALJ must reevaluate.**

Plaintiff argues the ALJ erred when evaluating the medical opinions from Dr. Morgan and Dr. Mitchell, who opined that Plaintiff had marked limitations maintaining attendance, communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal workday or week without interruption. Given the ALJ's errors when interpreting the medical records and evaluating Plaintiff's symptoms, the ALJ is to reevaluate these medical opinions.

In addition, the ALJ noted that the reviewing mental-health psychologists Patricia Kraft, PhD, and Rita Flanagan, PhD, did not review Plaintiff's records from Bridges or Klickitat Valley Health. Given the nature of Plaintiff's schizophrenia symptoms, it is important that at least one medical expert has a longitudinal perspective of his symptoms. To satisfy this need, the ALJ should order a second consultative mental-health examination and provide the 2020 and 2021 records from Bridges and Klickitat Valley Health, along with later treatment records and Dr. Morgan's report, to the examiner. [76] If Plaintiff does not appear for

_____

[76] 20 C.F.R. § 416.917; Program Operations Manual System (POMS) DI 22510.017(B).

the evaluation, the ALJ is to take testimony from a medical expert regarding the limiting effects of Plaintiff's schizophrenia at the hearing.[77]

**D.    Remand: further proceedings.**

Plaintiff seeks a remand for payment of benefits. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[78] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[79]

Here, further development of both Plaintiff's physical and mental impairments is necessary for a proper disability determination because disability is not clearly established.[80] To ensure Plaintiff has a fair hearing on this second remand, the Social Security Administrative is to assign this matter to a different ALJ.[81]

---

[77] *See* Hearing, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 & I-2-5-34.

[78] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[79] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

[80] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[81] *See* 20 C.F.R. § 404.940; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

#### IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process beginning at step two.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) before a different ALJ.**

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 7**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 24th day of September 2024.

_____
EDWARD F. SHEA
Senior United States District Judge